UNITED STATES BANKRUPTCY COURT          **FOR PUBLICATION**
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
In re
     Robert J. Swan
     Dorothy A. Feathers-Swan          Case No. 08-11210 K

                  Debtors
-----------------------------------------------------------------
John H. Ring, III, as Trustee in
Bankruptcy for Robert J. Swan
and Dorothy A. Feathers-Swan

                  Plaintiffs

     -vs-                  AP No. 13-1027 K

Robert J. Swan
Dorothy A. Feathers-Swan

                  Defendants
-----------------------------------------------------------------


John H. Ring III, Esq.
385 Cleveland Drive
Cheektowaga, NY   14218

Trustee and Attorney for the Trustee

Lance J. Mark, Esq.
P.O. Box 426
539-A Main Street
Medina, NY   14103

Attorney for Debtors



OPINION AND ORDER

In this Court the terms "turnover motion" and "turnover order" are

misnomers much of the time, and they are misnomers in this particular case.  After a

§ 341 meeting has closed, motions for "turnover" under 11 U.S.C. § 542 are a handy

device to enforce a debtor's duty of co-operation under 11 U.S.C. § 521. For example, "turn over information about" this or that. Such a notion also initiates negotiation about assets that are partially exempt under 11 U.S.C. § 522 (e.g. "turn over the car or an offer to purchase the non-exempt equity"). It elicits a commitment to something that will not exist until some time in the future (e.g., "turn over a copy of the state and federal tax returns that you will eventually prepare and file"). In this case, a turnover led to a new obligation because "turnover" is no longer possible - - the asset is gone, cannot be reproduced or recreated, and there will be a substitute.

Several interesting and important questions are presented in this case as a consequence. It is possible that some are unique to our District.[1] At first blush it seems to be a simple matter of a Chapter 7 trustee's Complaint to deny discharge to these debtors under 11 U.S.C. § 727 because of their disobedience of the Court's "Turnover Order" and "Contempt Order," but actually the following are the questions that are presented.

1. What if a debtor would have had a good defense to the turnover motion if that defense had been asserted? Should the turnover order be vacated, thus mooting the Trustee's § 727 Complaint?

2. If the object of the turnover order is cash that was received and expended in good faith in a Chapter 13 case before conversion to Chapter 7, what

[1]This writer does not know how other bankruptcy courts address such routine matters as are critically presented here.

circumstances might result in a turnover order after the conversion, if any?

      3.  If a turnover order is properly entered under #2 above, and if it results in a promise by a debtor to pay money <u>from future earnings</u> to substitute that long-gone cash, must discharge be denied under 11 U.S.C. § (727(a)(6)(A) if the money remains unpaid, even in the absence of proof that there was a "refusal" to obey the turnover order, rather than mere "inability" to pay (or something in-between)?

<div align="center">THE CASE</div>

      When the Debtors filed their Chapter 13 Petition on March 25, 2008, they did not have an available exemption for cash or for tax refunds, and so they did not claim any such exemption.

      They faltered in their Chapter 13 plan in 2010 and they voluntarily converted the case to Chapter 7.  The Chapter 7 Trustee has determined that as of the date of the filing of the Chapter 13 petition, the Debtors were entitled to non-exempt refunds for tax years 2007 and 2008 totaling $9,535.50.  He made a demand for that amount, followed by a Motion for Turnover under 11 U.S.C. § 542.  The Debtors did not argue against the Chapter 7 Trustee's claim and they negotiated (through counsel) a payment plan at over $500 per month.   A Turnover Order was entered on March 15, 2011.  The Debtors had made no payments even as of August, 201<u>2</u>, and so on August 17, 2012, the Trustee filed a Motion for Contempt for failure to obey the previous Turnover Order.

Apparently the Debtors and their lawyer had lost touch, so the lawyer

filed a Motion to Withdraw as Counsel.  It was heard on the Court's calendar just before

the Trustee's Contempt Motion against the Debtors on November 13, 2012.  The

withdrawal motion was granted and the Motion for Contempt was also granted.  It

assessed a $25 per day civil coercive penalty for each day thereafter that the Debtors

did not comply with the original Turnover Order.  (The Debtors had not personally

appeared at that November 13, 2012 Court session.)

No payments were ever made by the Debtors upon any Order, and after

their counsel withdrew they did not communicate with the Chapter 7 Trustee.  Non-

payment and non-communication led the Trustee  to file, on May 31, 2013, this

Adversary Proceeding objecting  to discharge under 11 U.S.C. § 727(a)(6)(A).[2]

When they were served with the § 727 Complaint, the Debtors rehired

legal counsel.[3]  Now that the "turnover" and "contempt" matter has spilled over into a

§ 727 Adversary Proceeding, and into a Motion by the Trustee for Summary Judgment,

the matter has been submitted on stipulated facts, but on a disputed question of law.

The Debtors argue that the original Turnover Order (and the subsequent

Contempt Order) were entered "without jurisdiction" and cannot form the basis of an

---

[2]As is routine in this District, the time for a Chapter 7 Trustee to object to discharge under 11 U.S.C. § 727 is always sought to be extended when a Chapter 7 Trustee makes a turnover motion, and is always extended in the turnover order and subsequent contempt order.  Thus there is no statute of limitations problem here with regard to the § 727 Complaint.

[3]The original Chapter 13 petition was filed by a different attorney.  Their present attorney dealt with the conversion to Chapter 7 until he withdrew as counsel as described above.  He is the one who has been rehired by the Debtors.

action under § 727(a)(6)(A) which punishes "refusal" to obey a lawful Court Order.

The argument is premised upon the fact that this Court ruled in the case of *In re Shick*, 452 B.R. 884 (Bankr. W.D.N.Y. 2011) (Bucki, C.J.) that if a Chapter 13 Debtor receives a tax refund after the filing of the petition but before conversion, and has expended the money in the ordinary course, in good faith, before conversion, then 11 U.S.C. § 348(f)(1)(A)[4] provides that the Chapter 7 Trustee has no claim to the funds thus expended.[5] They have moved to set aside the previous turnover and contempt orders arguing that "jurisdiction is always subject to challenge."[6]

The Court finds that 11 U.S.C. § 348(f), is not jurisdictional. It invests the Court with jurisdiction to evaluate what shall or shall not be part of a given debtor's chapter 7 estate after conversion. Consequently, it invests this Court with jurisdiction to make a decision that is erroneous. An erroneous decision is not a decision "without jurisdiction." There would be no need for the massive body of jurisprudence regarding the remedy of "relief" from an order, judgment or decree, such as is contained in Rules 59 and 60, F.R.Civ.P. (and in equity) were it not for the fact that some erroneous

---

[4]The text is "property of the estate in the converted case shall consist of property of the estate, as of the date of the filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion."

[5]In *Shick*, as is the case here, the debtors did not have an exemption for the tax refund. That fact was "built-in" to the *Shick* plan. In this case, the plan did not address potential tax refunds. It seems possible that the Debtors did not disclose likely tax refunds to the Chapter 13 Trustee. Such possibility is addressed below.

[6]This is usually phrased "Lack of subject matter jurisdiction can be raised at any time," and is, indeed, axiomatic. (Obviously a voluntary debtor in a bankruptcy case cannot claim lack of *in personam* jurisdiction here.)

decisions must be permitted to stand, in the interest of finality.  (See, for example *In re Gold and Silversmiths*, 170 B.R. 538 (Bankr. W.D.N.Y. 1994), and every case that relies upon Rules 59 and 60.)

Furthermore, 11 U.S.C. § 348(f) was not unequivocally in the Debtors' favor.  For them to have been protected by that statute in the face of the Trustee's initial motion under § 542, it was necessary for them to come before the Court for two purposes:  (1) to argue that any tax refunds received after they filed their Chapter 13 petition were properly disclosed[7]; and (2) to attest that the refund was spent in the ordinary course and in good faith before the conversion to Chapter 7.  Having failed to make their case at that time, the Turnover Order and Contempt Order were not in error, and certainly were not without jurisdiction.

Even now, after *Shick*, and in the case of *In re Lang* 437 B.R. 70 (Bankr. W.D.N.Y. 2010), and after today's decision, all debtors must respond appropriately to a Chapter 7 Trustee's Turnover Motion if they wish the protective umbrella of § 348(f).

The Turnover Order and Contempt Order will stand.

That said, the Court knows from long experience that the Panel of Private Chapter 7 Trustees are not of one mind with regard to the most critical question.  11 U.S.C. § 727(a)(6)(A) speaks of a debtor who "refuses" to obey a lawful order of the court.  Some debtors try mightily to obey the orders, but fail.  They ought not to suffer

---

[7]It is possible that there was no such disclosure in this case.  Tax refunds are not in the Schedules and are not mentioned in the Trustee's Report or in the Confirmation Order.

denial of discharge, in this Court's view.  Other debtors ignore the process of the court

and ought to have their discharge denied.  Many others are in the "middle."  They

respond to the court's orders but never seem to comply, making a case for mitigating

circumstances.

The Debtors here never made any payment upon the extended-term

proposal negotiated by their attorney with the Chapter 7 Trustee.  This Court has no

idea whether that was a "refusal" to obey the lawful orders of the Court, or simply an

inability to do so.

The Chapter 7 Trustee and the Debtors' counsel submitted this

§ 727(a)(6)(A) matter upon stipulated facts.  The Court sees nothing in those stipulated

facts to suggest a "refusal" to obey the lawful orders of the Court.


## DISCUSSION

The Court is left to guess whether the Debtors simply turned their backs

on an unpleasant obligation or whether they were financially unable to make even one

payment as promised.  Given such a draconian consequence (in this case, denial of

discharge would leave approximately $ 58,000 in unsecured debt at issue), the

outcome must not be left to this writer's "guesswork."

In a letter dated December 30, 2013 to counsel, this Court (setting a

briefing schedule) asked counsel to address "whether a denial of discharge under

§ 727 is the proper remedy in this case . . . when the money was spent in good faith

during the Chapter 13 (as opposed to those cases I get in which Chapter 7 debtors are

told that when they receive the tax refund, X dollars belong to the Trustee, but they

spend it anyway).  In other words, did the Debtors "refuse to obey" the lawful Orders of

the Court, as § 727(a)(6) contemplates?"  This writer further stated "I have no idea what

distinguishes this type of case from the many cases I get in which a Trustee decides to

record a money judgment and close the case without abandonment [thereof], instead of

filing the § 727 Complaint.  Might some Trustees see this type of case as one that is

not within the scope of § 727?"

The Trustee responded to this particular inquiry in absolute, line-in-the-

sand, terms.  "The prior Orders of this Court are an Order to Compel and an Order for

Contempt (which indicates that there should be a $25 per day monetary sanction for

each day that the Debtors do [not] comply with the Order).  The Debtors have made two

payment arrangements with the Trustee and have failed to pay any monies to the

Trustee or any effort to rectify any Orders of the Court.  Therefore, it is the position of

the Trustee that the Debtors' discharge should be denied."

The Trustee has a point as to "effort to rectify."   Whenever a party

decides that he, she or it cannot or will not perform an Order of the Court, the party is

not free to disregard it.  He, she or it must seek relief from the Order.  Until now[8] the

Debtors did not seek relief from the Turnover Order or from the negotiated payment

---

[8]The Motion to vacate the prior Orders has been filed now that that has become an issue, and is subsumed in this Decision.

plan.  Their failure to do so increased the costs to the estate.

CONCLUSION

It does not seem to this writer that <u>all</u> Chapter 7 debtors who are not fully compliant with an Order of the Court should be denied discharge. Denial of discharge is reserved for dishonest people, and if courts were to punish the merely "unfortunate" in the same way violates the axioms upon which the concept of 'discharge' (rather than debtors' prison, for example) is based. The stipulated facts do not bespeak "refusal" and this Adversary Proceeding is dismissed.[9]

Although the turnover order and contempt order will stand, the $25 per day civil coercive penalty is hereby suspended pending further Order of the Court.

The Trustee shall use his business judgment and legal judgment to negotiate a dollar amount as to which a money judgment shall be entered and filed in whatever counties are appropriate.

If agreement for the money judgment is reached, the Court will approve it after Rule 9019 notice, in the absence of objection. Counsel are to contact chambers if there is no agreement.

For tracking purposes, this Adversary Proceeding is set for **March 11, 2014 at 2:30 p.m.** in Batavia at the Genesee County Courthouse, 7 Main Street, 3rd

---

[9]To repeat, this Adversary Proceeding was submitted on stipulated facts. By such stipulation it may not be put over for further factfinding or for trial.

Floor Courtroom, Batavia, NY   14020.

SO ORDERED.

Dated:        Buffalo, New York
              February 18, 2014

s/Michael J. Kaplan

_____
U.S.B.J.